# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| King Chevais Conyers, | Case No. 6:24-cv-04569-RMG |
| Petitioner, | |
| v. | **ORDER** |
| Shane Jackson, Warden of Lee Correctional Institution, | |
| Respondent. | |

Before the Court is the Report and Recommendation (R&R) of the Magistrate Judge, (Dkt. No. 21), recommending that Respondent's motion for summary judgment be granted and Petitioner's habeas petition brought pursuant to 28 U.S.C. § 2254(d) be dismissed. For the reasons stated below, the Court adopts the R&R, grants Respondent's motion for summary judgment, and denies Petitioner's habeas petition.

**I.     Background**

A Grand Jury indicted Petitioner and his co-defendant, Jeremiah Belton, for murder, first-degree burglary, and possession of a handgun during the commission of a violent crime.[1] (Dkt. No. 12-1, at 40-43). In November 2015, Petitioner and Belton were tried jointly in the Charleston

---

[1] A review of the trial court record shows the following: Petitioner, Belton, and five other men devised a plan to burglarize Melvin Simmons's home. (Dkt. No. 12-1, at 262-63; Dkt. No. 12-2, at 51-52). After arriving to Simmons's house and forcing their way inside, the group was met with gunfire from Simmons and his girlfriend, Shemika Stokes. (Dkt. No. 12-2, at 100-04; Dkt. No. 12-3, at 15). The shootout resulted in the death of Simmons and one of Petitioner's accomplices, as well as the non-fatal wounding of another accomplice. (Dkt. No. 21, at 5-6).

1

County Court of General Sessions for the Ninth Judicial Circuit. (Dkt. No. 12-1, at 8). The jury found them guilty of each offense charged in the indictment. (Dkt. No. 12-5, at 163-165). Petitioner was sentenced to two life-term sentences for murder and first-degree burglary and five years, concurrent, for the possession offense. *Id.* at 180.

Petitioner appealed his conviction. *Id.* at 195, 216. The South Carolina Court of Appeals dismissed the appeal and remitted the matter on January 26, 2018. (Dkt. No. 12-5, at 229; Dkt. No. 12-7, at 18). On February 18, 2018, Petitioner filed an application for post-conviction relief ("PCR"), raising various claims of ineffective assistance of counsel and a newly discovered evidence claim. On April 24, 2023, the PCR court dismissed Petitioner's application. (Dkt. No. 12-26). Petitioner filed a notice of appeal on May 5, 2023, *id.* at 41, and a Petition for Writ of Certiorari in the Supreme Court of South Carolina on July 26, 2023. (Dkt. No. 12-27). The South Carolina Supreme Court denied Petitioner's petition on April 17, 2024, and remitted the matter on May 3, 2024. (Dkt. No. 12-30; 12-31).

Petitioner filed this Petition for Writ of Habeas Corpus on August 21, 2024, (Dkt. No. 1), claiming that he was denied the effective assistance of counsel in two respects and that the PCR court's decision to exclude newly discovered evidence under South Carolina rules of evidence was based on an unreasonable determination of the facts in light of the evidence. *Id.* Respondent filed a motion for summary judgment, (Dkt. No. 13), Petitioner responded, (Dkt. No. 18), and Respondent replied. (Dkt. No. 19).

The Magistrate Judge found that (1) the state court's rulings on the respective ineffective assistance claims were not contrary to or an unreasonable application of Supreme Court precedent and (2) the newly discovered evidence claim was, if construed as a claim of actual innocence, without merit, or in the alternative, not cognizable on federal habeas review because it involved

2

claims of state law error, and therefore, granted Respondent's motion for summary judgment and denied Petitioner's habeas petition. (Dkt. No. 21). Petitioner filed timely objections, (Dkt. No. 24), and Respondent replied. (Dkt. No. 25).

II. **Legal Standard**

    A. **Magistrate Judge's Report & Recommendation**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1). Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. Where a petitioner fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citation and punctuation omitted).

    B. **Federal Habeas Review**

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Critically, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

### C. Habeas Review of Ineffective Assistance of Counsel

Where allegations of ineffective assistance of counsel are made, the question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, Petitioner must show that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment of the United States Constitution. *Id*. at 687–88. Second, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Failure to satisfy both prongs of the *Strickland* test, "defeats the ineffectiveness claim." *Id*. at 700. "The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citation and punctuation omitted). In applying § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.

### D. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is

"material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) (citation omitted).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996) (citation omitted). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist that give rise to a genuine issue. See id. at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Unreasonable Determination of Facts and Credibility Regarding Alibi Witness

Petitioner argues that the Magistrate Judge improperly credited the PCR court's finding that Petitioner's trial counsel credibly testified regarding his rationale for not calling Petitioner's girlfriend, Vondayna Brown, as an alibi witness. (Dkt. No. 24). Moreover, Petitioner contends that the Magistrate Judge's deference to the PCR court's finding that Brown lacked credibility was erroneous. *Id*. This finding, Petitioner asserts, is inconsistent with the similar alibi basis upon which Belton's PCR petition was granted. *Id*. Ultimately, Petitioner contends that he was

5

prejudiced by trial counsel's failure to call Brown to testify, as the State's case against Petitioner was entirely circumstantial, relying primarily on testimony from accomplices and evidence of cell phone location data that place a phone associated with Petitioner near the crime scene around the time the murder took place. *Id*.

The PCR court found that Petitioner's trial counsel was not deficient for failing to call Brown as a witness. (Dkt. No. 12-26, at 9-12). Specifically, the court found that trial counsel credibly testified at the PCR hearing that he intended to call Brown to testify until he learned that the State was prepared to call a rebuttal witness if Brown or Petitioner testified that Petitioner was with Brown on the day of the murder. *Id*. at 10. Counsel opined that the rebuttal testimony would have damaged Petitioner's case, as the rebuttal witness was "adamant" that Brown and Petitioner were not where Brown claimed they were. *Id*. The PCR court further found that Petitioner could not show prejudice from counsel's alleged deficiency. *Id*. at 11-12. The court reasoned that Petitioner and Brown were not credible regarding Petitioner's alibi defense; precisely, Brown's anticipated testimony about Petitioner being at work on the days surrounding the murder conflicted with trial counsel's credible testimony that Petitioner's employer said that Petitioner was not at work on the relevant days. *Id*. Finally, the court concluded that counsel for the State credibly testified that they had a rebuttal witness that would have undermined Petitioner's alibi defense. *Id*. at 12.

The Magistrate Judge concluded that there was no evidence to support a finding that the PCR judge's credibility determinations were unreasonable. (Dkt. No. 21, at 54-57). The Magistrate Judge also distinguished Belton's alibi claim, as Belton's petition—granted by a different PCR court—was based on his trial counsel providing inconsistent testimony regarding whether he investigated Belton's alibi defense. *Id*. at 56-57. In contrast, the Magistrate Judge noted, Petitioner's trial counsel credibly testified that he intended to call Brown as an alibi witness until

6

he discovered that the State intended to call a witness who would rebut Brown and damage Petitioner's alibi claim. *Id*.

The Court agrees with the Magistrate Judge's conclusion that the PCR court's fact and credibility determinations were not unreasonable. As noted above, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Relatedly, credibility determinations, such as those the PCR court made regarding Brown and Petitioner's counsel, are factual determinations and "are presumed to be correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted). Here, Petitioner does not offer any clear and convincing evidence that the PCR court's credibility determinations as to his trial counsel or Brown were unreasonable under § 2254(d). Rather, to support his claim, Petitioner makes conclusory arguments that fail to overcome the presumption that the state court's credibility determinations were correct. Moreover, the Court agrees with the Magistrate Judge's conclusion that the circumstances of Belton's granted petition are distinct from the circumstances at hand. Indeed, Belton's PCR judge granted his petition because Belton's trial counsel's testimony was found not credible regarding whether counsel investigated Belton's alibi defense. In this case, however, the PCR court found that trial counsel credibly testified about his initial plan to call Brown to testify as an alibi witness and his rationale for ultimately choosing not to. Accordingly, the PCR court's determination that Brown lacked credibility is supported by the record and not inconsistent with Belton's granted petition.

The Magistrate Judge also correctly found that Petitioner's trial counsel did not perform deficiently by not calling Brown as an alibi witness, considering that there was strong evidence

that she would falsely testify about where Petitioner was the day of the crime. *See Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce." (citation and punctuation omitted)). Therefore, Petitioner fails to show how the findings of the PCR court regarding Brown were unreasonable.

### B. Ineffective Assistance of Counsel for Failure to Properly Assess and Address Cell Phone Evidence

Petitioner alleges his trial counsel was ineffective for failing to investigate or challenge the State's cell phone evidence, given the substantial ambiguity surrounding the ownership and use of the phone that was linked to Petitioner. (Dkt. No. 24).

At trial, Constance Manigault, the girlfriend of one of Petitioner's accomplices, testified that she saved a phone number ending in 9516 under Petitioner's name in her contacts. (Dkt. No. 12-2, at 130-31). She had previously used this number to communicate with him. *Id*. at 141. She also testified that she spoke to Petitioner on that phone number in the early morning hours after the murder. *Id*. at 136-37. During cross-examination, Petitioner's trial counsel elicited testimony from Manigault that she had only met Petitioner once and could not remember when she saved the 9516 phone number in her contacts. *Id*. at 139, 141.

Additionally, the State called a cell phone location data expert to testify at Petitioner's trial. (Dkt. No. 12-4, at 86-87, 91). Petitioner's trial counsel challenged the qualifications of the expert, but the trial court ultimately qualified him as an expert in call-detail analysis. *Id*. at 93-97, 112. The expert testified that the 9516 phone number was associated with a prepaid phone that had no subscriber information. *Id*. at 120. The expert further posited that the phone associated with the

9516 phone number was registering off a cell tower near to and around the time of the crime and had extensive communication with a phone associated with Belton in the days leading up to the murder. *Id*. at 153, 161. On cross, trial counsel elicited testimony from the cell phone expert that he could not independently verify that Petitioner owned the phone associated with the 9516 phone number. (Dkt. No. 12-5, at 22).

At the PCR hearing, Petitioner recalled that trial counsel told him that the State had cell phone evidence, but "none linking to [Petitioner]." (Dkt. No. 12-26, at 12). Petitioner also denied ownership and usage of the phone associated with the 9516 phone number and allegedly told trial counsel to examine the contacts in the 9516 phone to ascertain whether Petitioner's relatives' phone numbers were saved in the phone. *Id*. Petitioner additionally denied that he knew Manigault. *Id*. Brown also testified at the PCR hearing. *Id*. She stated that she was not aware that Petitioner had a phone number ending in 9516 and that she and Petitioner shared a phone and phone number, which did not end in 9516. *Id*. Petitioner's trial counsel recalled that because the State had evidence linking Petitioner to the 9516 phone number, ownership of the phone was not the primary issue at trial, but rather who was using the phone on the relevant days. *Id*.

The PCR court found that Petitioner's trial counsel credibly testified that the central issue was not the ownership of the phone with the 9516 phone number, but rather who used it on the night of the murder. *Id*. The PCR judge also determined that trial counsel was effective in cross-examining Manigault and that trial counsel's decision not to investigate other contacts in the phone associated with the 9516 phone number was reasonable within prevailing professional norms, as this information likely would not have changed the outcome of the trial. *Id*. at 13.

The Magistrate Judge found that there were reasonable arguments that showed trial counsel satisfied *Strickland*'s deferential standard. (Dkt. No. 21, at 58). Particularly, the Magistrate Judge

found that trial counsel was not deficient because he challenged the cell phone expert's qualifications, thoroughly cross-examined the expert regarding his analysis, and weakened Manigault's testimony regarding Petitioner's connection to the 9516 phone number. *Id*.

The Court agrees with the Magistrate Judge's conclusion that the PCR court's application of *Strickland* was not unreasonable. As the Magistrate Judge noted, the record belies Petitioner's claim that his trial counsel did not properly assess and address cell phone evidence. What the record shows is this: trial counsel attacked the credibility of Manigault and challenged the opinion and expert status of the State's cell phone location data witness. *See, e.g.*, *Harrington*, 562 U.S. at 111 (concluding that the state court's determination that trial counsel was not deficient under *Strickland* was not unreasonable where, among other things, trial counsel "elicited concessions from the State's experts and was able to draw attention to weaknesses in their conclusions stemming from the fact that their analyses were conducted long after investigators had left the crime scene"). Therefore, it was not an unreasonable application of the deferential *Strickland* standard, nor an unreasonable construction of the record, for the PCR court to conclude that Petitioner failed to overcome the presumption that his counsel competently and professionally assessed and addressed the cell phone evidence presented at trial. *See generally id.* at 105 ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." (citation and punctuation omitted)).

## C. Unreasonable Exclusion of Newly Discovered/Exculpatory Evidence

Petitioner argues that the PCR court erred by ruling that evidence of an accomplice recanting their trial testimony concerning another accomplice was not admissible under South Carolina Rule of Evidence 804(b)(1). (Dkt. No. 24). This claim is not cognizable on federal habeas

review because Petitioner is alleging state law error. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding federal habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States" and "does not lie for errors of state law"). Therefore, the Magistrate Judge was correct in concluding that summary judgment was appropriate on these grounds.

### D. Misapplication of AEDPA Deference

Petitioner argues that the Magistrate Judge used an overly deferential standard, failing to independently review the PCR court's findings. Petitioner claims the R&R simply repeated the PCR judge's conclusions and contends that the evidence presented, including alibi testimony and a recantation, should have been sufficient for a different outcome. (Dkt. No. 24). The Court concludes that Petitioner's contention amounts to a mere disagreement with the R&R, as opposed to identifying any unreasonable determinations made by the PCR court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") this court has jurisdiction to hear habeas petitions from individuals in custody pursuant to a state court proceeding. Pub. L. No. 104–132, 110 Stat. 1214. The AEDPA provides relief if the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The AEDPA involves a "*highly deferential standard* for evaluating state-court rulings, . . . which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (emphasis supplied) (citation and punctuation omitted). Accordingly, federal courts are not only entitled to

11

defer to a state court's findings but are required to do so, unless the finding is "stark[ly] and clear[ly]" erroneous. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citation omitted). Here, the Court finds no instance—nor has the Petitioner identified one—where the Magistrate Judge deferred to a finding of the PCR court that was clearly erroneous or unreasonable. Moreover, Petitioner completely mischaracterizes the R&R. A careful review shows that the Magistrate Judge ably summarized the PCR court's reasoning and, after conducting its own independent and meticulous analysis, determined that the PCR court's findings were not unreasonable. Therefore, this contention fails.

IV.   **Conclusion**

For the foregoing reasons, the Court **ADOPTS** the R&R, **GRANTS** Respondent's motion for summary judgment, and **DENIES** Petitioner's habeas petition.

**AND IT SO ORDERED.**

          s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 8, 2025
Charleston, South Carolina